THE FARMERS' LOAN AND TRUST COMPANY, Plaintiff and Appellant, *v.* DAVID M. HUGHES, Impleaded with THE MILWAUKEE AND ST. PAUL RAILWAY COMPANY and THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Defendant, Appellant.

*Trustee under railroad mortgage — effect of his removing to another country — enjoining him from acting as trustee.*

The rights and duties acquired by and imposed upon a trustee under a mortgage executed by a railroad company are personal in their character and incapable of delegation, and when such trustee voluntarily removes to and becomes a resident of a foreign country, he incapacitates himself from discharging the duties of his office, and thereby vacates the same.

In such case this court will enjoin him from acting as such trustee, and from further prosecuting an action, as trustee, in the United States court.

Cross appeals from part of an order made at Special Term granting an injunction, and from a part refusing an injunction. The defendant Hughes appealed from the order because it restrained him from acting as a trustee, and the plaintiff because it did not restrain the defendant Hughes from proceeding with an action commenced by him as trustee.

*Charles D. Ingersoll*, for the defendant Hughes. The justice properly denied the motion for an injunction against the further prosecution of the suit in the United States Circuit Court. This State court has no injunction to enjoin the prosecution of that action. (*Mead* v. *Merritt*, 2 Paige, 402; *McKim* v. *Voorhies*, 7 Cranch, 279; *Schuyler* v. *Pelissier*, 3 Edw. Ch., 191, and cases cited, approved and followed in *Coster* v. *Griswold*, 4 id., 364; Willard's Equity Jurisp., 348, and cases cited; *Williams* v. *Ayrault*, 31 Barb., 364; *Mariposa Co.* v. *Garrison*, 26 How. Pr., 448.) If the plaintiff here has any equity, he should apply to the United States Circuit Court, which court has equity jurisdiction and full power to grant all the relief sought by this motion, and to do complete justice to all the parties. (*Grant* v. *Quick*, 5 Sandf., 612; *Coster* v. *Griswold*, 4 Edw. Ch., 364; *Mallow* v. *Hinde*, 12 Wheat., 193; *Erie Railway Co.* v. *Ramsay*, 45 N. Y., 637; *Dunn* v. *Clarke*, 8 Peters, 1.) Even if Hughes did remove from this country, it has not created a vacancy. (*Withington* v. *Withington*, 16 Simons, 104; *In re Watts*, 9 Hare, 106; S. C., Law Jour., vol. 20 Rep. [N. S.], Eq., 337; *In re The Moravian Society*, 26 Beav., 101; *Cammeyer* v. *United Germ. Luth. Ch.*, 2 Sandf. Ch., 186.) "An alien may be trustee of a corporation." (See, also, Lewin's Law of Trusts [5th ed.], 467, § 16.)

*E. Randolph Robinson* and *F. W. Bangs*, for the plaintiff. The court below erred in refusing to restrain the defendant Hughes from proceeding with his action in the federal court. The power of the court to enjoin, in a proper case, parties from proceeding before another court in the same State, or in a sister State, or in a foreign or federal court, cannot be denied. (High on Inj., §§ 57 to 60, and 208; *Vail* v. *Knapp*, 49 Barb., 299; *Dehon* v. *Foster*, 4 Allen [Mass.], 550; *Bank* v. *Rutland*, 28 Vt., 470; *Ackerley* v. *Vilas*, 15 Wis., 401; *Engel* v. *Scheuerman*, 40 Ga., 206; *Mitchell* v. *Bunch*, 2 Paige, 606; *Hayes* v. *Ward*, 4 Johns. Ch., 123; *Erie Railway Co.* v. *Ramsay*, 45 N. Y., 637; *Barry* v. *Brune and the Mutual Life Ins. Co.*, Supreme Court, first dept., MS. opinion; *Craft* v. *Lothrop*, 2 Wall., Jr., 103; *Gray Falls* v. *Worcester*, 23 N. H., 470; *Bunby* v. *Bunby*, 1 Beav., 320; *Beckford* v. *Campbell*, 1 Simons & Stuart, 7.)

Brady, J.:

The plaintiffs seek to enjoin David M. Hughes from acting as trustee under a certain mortgage executed by the Milwaukee and St. Paul Railway Company, and by which he and John P. Yelverton were appointed trustees for the purposes mentioned. Mr. Yelverton died about the 1st of January, 1867, and the duties of the trust, by the instrument creating it, devolved upon Mr. Hughes. The mortgage provided that the trustees, or their survivor, might be removed by the vote of a majority, in interest, of the holders of the bonds referred to in the mortgage, at any meeting called for that purpose; and, further, by a separate and distinct provision, that in case of the death, removal, resignation, incapacity or inability of both or either of said trustees to act in the execution of the trust, then a majority of the holders of such bonds might designate and select, in writing, one or more competent persons to fill the vacancy so occurring. The plaintiffs were designated and selected in the place of Mr. Hughes upon the assumption that he having permanently removed from this State and become a resident of France, the majority of bondholders empowered to select in case of the incapacity or inability of the trustee to act in the execution of the trust, had the right to exercise their authority, and thus to remove Mr. Hughes. The plaintiffs insist that the defendant Hughes has changed his residence permanently, while the latter, through his agent and attorney, maintains that the absence is only temporary, and for the purpose of educating his daughter. The plaintiffs also insist that the change of residence, such as they assert it to be, incapacitates the defendant, Hughes, from continuing as trustee, while the latter insists that even if his residence abroad be regarded as permanent, he is not disqualified, and that the majority of bondholders referred to could not displace him. In reference to the first dispute, it appears that Mr. Hughes went abroad in the year 1865, and has, with slight intervals which he spent in this country, continuously remained away. It also appears that Mr. Harvey H. Woods also had known Mr. Hughes for fifteen years. In an affidavit made by him herein, he stated, among other things, as follows: "Deponent further says, that shortly after the said David M. Hughes first went abroad, deponent was requested by the said Hughes to attend, for him, to a matter relating to some assess-

ments which had been made upon him, in the city of New York, for personal taxes, or taxes upon his personal estate, which, as deponent is advised and believes, are assessed only against residents of the city, and that the said Hughes requested deponent to have the assessments which had been made against him on his personal property removed or vacated, on the ground that he was not a resident of the city of New York; and deponent did make application on behalf of the said Hughes to the tax commissioners of the city of New York, on the ground of the non-residence of said Hughes, for the vacation of the said personal tax and assessments, and the same were so vacated, and have not been since imposed or assessed against the said Hughes, as deponent is informed and believes." It also appears that none of the allegations in the complaint contained are denied by Mr. Hughes, except through his agent and attorney, and that the incident related by Mr. Woods in regard to taxes is not at all contradicted. It is, however, the controlling feature in the case. The long-continued absence of Mr. Hughes, coupled with the application to be relieved from taxes as a non-resident, is, in the absence of responsive proof, sufficient to sustain the truth of the charge that he has become a permanent resident of another country. It is true that it appears from the conversations had between Mr. Hughes and Mr. Cowdrey, his agent and attorney, that the trustee expressed his intention to return, and avowed his continued residence here, but his acts are inconsistent with such intent and avowal, and cannot be accepted as other than quite sufficient to establish the charge of non-residence. The result is, that the first question must be held to have been properly decided against Mr. Hughes. In regard to the second disputed proposition, it must be said that the trust conferred is personal, and not to be delegated. Indeed, it is the general characteristic of a trust that it is personal, and not to be transferred to another. The trustee is generally selected because of confidence in his integrity and capacity, and especial fitness for the duties imposed by the trust. His personal attention is the basis of his duty, and this cannot be given, as contemplated, during a residence far away. The duties which Mr. Hughes was called upon to perform were important. They are correctly set forth by the plaintiffs' counsel as follows: These duties are:

First. Those which will arise in the event of the non-payment of interest, and of foreclosure, namely: To enter into and upon and to take actual possession of all the property, real and personal, and rights and franchises of the railway company, and to hold, use and enjoy the same, to make repairs, etc., and to collect and receive all tolls, freight, income, rents, issues and profits of the same, and of every part thereof.

In the contingency of foreclosure, there are also these further duties to discharge, namely: To sell at public auction, to the highest bidder, the entire property, real and personal, of the railway company; to give the proper notices of sale; to execute the necessary conveyances; and after such sale, to distribute the moneys derived from operating the railway, and the proceeds of sale, in their proper order, among the parties entitled thereto, or, at the request of a majority of the bondholders secured by the mortgage, to buy in the property, real and personal, of the railway company, at the foreclosure sale, and thereupon to organize a new corporation, and to convey the premises purchased to such new corporation.

If the trustee, with these obligations resting upon him, voluntarily removes to a foreign land, and becomes a resident of it, there does not seem to be room to doubt his inability, in the language of the trust, to act in its execution according to its spirit, object and its ultimate ends, which were to secure the advantages of a faithful and prompt personal fulfillment of its provisions, according to the facts and circumstances prevailing or to occur during its existence.

If the question were *res nova*, there is little doubt that the courts would, without hesitation, declare that a permanent residence abroad, or even a temporary residence, which rendered the full discharge of the trust duties problematical, would revoke the trusts. The *cestuis que trust* are entitled to the absolute certainty of such personal devotion to their interests and confidence as the trust conferred contemplates, and hence it is that the courts, when the trust is accepted, will not permit the trustees to abandon it or yield it up without a decree therefor, to be made only upon investigation and due consideration. The text-books, and many of the authorities bearing upon the question, recognize a permanent residence abroad as an incident in the life of a trustee which incapacitates him from performing the trust reposed in him. The rule is sound, and sus-

tained by the relations of personal confidence and personal duty which spring from the trust itself. (Perry on Trusts, § 275, and cases cited; *O'Reilly* v. *Alderson*, 8 Hare, 104; *Smith* v. *Smith*, 10 Hare App., lxxi; *In re Ledwith*, 6 Irish Eq., 562; *Atty.-Gen.* v. *City of London*, 3 Brown's Ch., 171; *Lake* v. *De Lambert*, 4 Ves., Jr., 592; *Mennard* v. *Wilford*, 1 Sm. & G., 426; *Re Stewart*, 8 Week. Rep., 297; *Commissioners of Charity Donations* v. *Archbold*, 11 Irish Eq., 187, 194; *Comegys* v. *The State*, 10 Gill & J., 183, 184; *Dorsey* v. *Thompson*, 37 Md., 27, 47; *Maxwell* v. *Finnie*, 6 Cold. [Tenn.], 434; *Ex parte Tunno*, Bail. Eq. [S C.], 387; *Ex parte Robert*, 2 Strob. [S. C.], 88, 89; *Ketchum* v. *Mobile and Ohio R. R. Co.*, MS. op. of WOODS, Ch. J.)

Having arrived at this conclusion, it follows that the designation and selection of the plaintiff by the bondholders as the trustee in place of Mr. Hughes was, *prima facie*, authorized, and is legal, and that the latter is deposed. It follows, also, from this result, that he cannot longer continue any litigation in reference to the trust, and that the plaintiff must be ultimately substituted in his place therein, unless the final judgment of this court, in case of a trial of this action, shall determine that he was not lawfully removed; for this reason, he should be restrained from acting as the trustee of the company, and the restraint should be extended to actions pending in his name, without which it might be supposed he still had authority to conduct and manage them. It would seem to follow, as the natural legal sequence of restraining him from acting as the trustee of the company, that he could not continue in his name any action commenced by him as such trustee; and hence the order at Special Term, while it was correct in prohibiting him from acting in that capacity, was erroneous in not preventing him from prosecuting the action which he had commenced in the Circuit of the United States against the company. It might be well, in some cases, to make such an order, but there does not exist in this case facts which require it. The order should have enjoined the trustee, Hughes, from the further prosecution by him of the action mentioned. The plaintiffs are abundantly able to take proper care of the interests of the *cestuis que trust*, and are responsible for a faithful discharge of the duties they have accepted.

There should, for these reasons, be an affirmance of that part of

the order appealed from by the defendant Hughes, and a reversal of that portion appealed from by the plaintiffs.

Ordered accordingly, with ten dollars costs and the disbursements of this appeal.

Daniels, J., concurred.   Davis, P. J., taking no part.

Order affirmed on defendant's appeal, and that part of the order appealed from by plaintiffs reversed, with ten dollars costs and disbursements.